UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 05-CR-30045-MAP |
| ) | |
| ENRIQUE GONZALEZ, ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT
OF PRE-TRIAL DETENTION

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits the following memorandum of law in support of its Motion for Pre-trial Detention of the Defendant Enrique Gonzalez. Briefly, this Court should allow the motion because the Defendant poses a risk of flight and a danger to the community. The Defendant has not successfully rebutted the presumption that no condition of release will reasonably assure the Defendant's appearance as required or the safety of the community.

Procedural History

On June 9, 2005, a federal grand jury returned a two-count indictment against the Defendant alleging distribution of crack cocaine and distribution of heroin in violation of Title 21, United States Code, Section 841(a)(1). Gonzalez was arrested on June 15, 2005, and Magistrate Neiman conducted the Defendant's initial appearance on that same date. At that hearing, the government moved for detention pursuant to Title 18, United States Code, Sections 3142(e) and (f). The government invoked

the rebuttal presumption against the Defendant, pursuant to 18 U.S.C. Section 3142(e) based on probable cause the Defendant committed an offense for which the maximum term of imprisonment of ten years or more is prescribed by the Controlled Substance Act (21 U.S.C. 801 et seq.).[1]  Magistrate Judge Neiman allowed the government's motion.

On June 17, 2005, the Defendant filed his Motion to Reopen the Detention Hearing.  In support of his motion, the Defendant submitted letters written by relatives and friends.[2]  On July 11, 2005, Magistrate Neiman ordered the defendant released upon conditions.[3]

The government filed it's appeal of this decision on July 11, 2005.  The government respectfully disagrees with the Magistrate Judge's conclusions and urges this Court to issue an order of detention as moved for by the government and recommended by pretrial services.  In deciding whether to revoke the Magistrate's decision to release the Defendant, the Court should consider the statutory factors set forth in 18 U.S.C. § 3142(g),

---

[1] The Defendant faces a statutory mandatory minimum sentence of five years, and a maximum sentence of 40 years.  See 21 U.S.C. §841(b)(1)(B).

[2] The letters submitted by the Defendant are attached as Exhibit A (eight pages total).

[3] Those conditions are set forth in the Magistrate Judge's Memorandum issued on July 13, 2005.

2

including (1) the nature and circumstances of the offense, (2) the weight of the evidence, and (3) the history and characteristics of the Defendant. An analysis of these statutory criteria lead to the conclusion that no conditions of release could serve as a reasonable guard against the Defendant's risk of flight or the danger the Defendant presents to the community.

Argument

1. <u>The Defendant presents a flight risk.</u>

In arguing for the Defendant's detention before Magistrate Nieman, the government placed substantial weight on the Defendant's criminal history. The Government renews this emphasis in its appeal. Although the government has evidence the Defendant is a member of the Latin King Street Gang, the Defendant's criminal history provides the clearest indication of his future behavior regarding his risk of flight and the danger he presents to the community. For the Defendant has demonstrated that he is unable to abide by any court-imposed conditions of release. On November 30, 1998, the Defendant and an accomplice dragged an individual from his apartment in Holyoke. Once outside, the Defendant and his accomplice beat the victim, and then shot the victim in the face with a shotgun. The Defendant fled the state of Massachusetts almost immediately after this crime. At the time he left Massachusetts, the Defendant was on supervised release for three different state court cases – two

3

cases charging assault and battery, and one case charging illegal possession of a firearm. Three warrants issued for the Defendant's arrest on December 8, 1998 - an arrest warrant for armed assault to commit murder, and two default warrants violating the terms of probation.

The Defendant was arrested on these warrants in May of 1999 in Rhode Island. He was returned to Massachusetts in June 1999, in order to be arraigned for, inter alia, armed assault to commit murder, assault dangerous weapon, assault and battery. The Defendant remained in custody[4] until April 24, 2000, at which time the Defendant pleaded guilty to the shooting offense described above. The Defendant was sentenced to three to five years imprisonment.

The Defendant history of defaulting leads to the strong inference that he is likely to flee in the face of the federal indictment which calls for a Sentencing Guideline range of 262 months to 327 months, and a statutory minimum sentence of five years imprisonment. This evidence of the likelihood the Defendant will flee more than satisfies the preponderance of evidence burden of proof. See United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991) (recognizing that the preponderance standard applies to the flight determination).

In addition to the Defendant's criminal history, the very

---

[4]The Defendant's bail was set at $25,000.

4

nature of the indictment against the Defendant supports the government's position that the Defendant presents a risk of flight.  The Defendant is charged with violating the Controlled Substances Act (21 U.S.C. 801 et seq.).  By establishing a presumption of detention under 18 U.S.C. §3142(e), Congress has recognized that drug traffickers, as a general rule, pose a special risk of flight.  The government's case against the Defendant is strong.  It includes video and audio recordings of the Defendant distributing crack cocaine and heroin to a cooperating witness.  This transaction occurred less than six months after his release from state prison, where he was serving a sentence for armed assault with the intent to murder.  When the police arrested the Defendant on June 15, 2005, they recovered a digital scale and an amount of marijuana that is consistent with the intent to distribute in the Defendant's bedroom.

   The third significant factor this Court should consider when assessing this Defendant's risk of flight is that the Defendant does not have strong ties to Massachusetts.  He was born in New York, he grew-up in Puerto Rico, he lived in Rhode Island as recently as 1999, and he was incarcerated from 1999 through May 2004.  The Defendant's ties to the community - namely, his aunt, uncle, and girlfriend of approximately one year - are not sufficiently strong to keep him in the area.  When questioned by Magistrate Neiman, not one of the witnesses offered any tangible

5

reason why they believed the Defendant would remain in Massachusetts to contest the indictment against him. Not one of the witnesses offered any indication that they exercised any significant influence over the Defendant.

2.  <u>The defendant presents a danger to the community.</u>

The Defendant's record of convictions and open federal indictment establish by clear and convincing evidence that the Defendant presents a danger to the community. The Defendant has been convicted of three violent acts and two firearm offenses, including a shooting (described above). In addition, Mariuz LaGuna, the mother of the Defendant's daughter, obtained a restraining order against the Defendant in 1998. In her affidavit, LaGuna described Defendant had beaten her and damaged her apartment on more than one occasion.

In ordering the Defendant's release, Magistrate Nieman relied upon <u>United States v. Patriarca</u> for the proposition that a court can sufficiently mitigate the risks a defendant poses to the community by imposing conditions of release. 948 F.2d 789. The circumstances the court considered in <u>Patriarca</u> in making a determination to release the Defendant upon strict pretrial conditions are very different from the circumstances before the Court in this case. In <u>Patriarca</u>, the First Circuit reviewed a district court's release order concerning a Defendant, Raymond Patriarca ("Patriarca") who had no criminal record and who held

"legitimate employment as a real estate developer." Id. at 792. The court found that Patriarca had "no penchant or personal aptitude for violence." Id. The court characterized the Defendant as "a reluctant and ineffective Mafia Boss, one who achieved his position by virtue of nepotism rather than merit." Id. Patriarca also suffered from bladder cancer, and required hospitalization every three months. Id. The Defendant in this case has an alarming criminal record for violence and firearm offenses. The Defendant is a physically-fit 28 year old who has not been lawfully employed in many years.

It is unrealistic for the Defendant's family and friends to assume the responsibility to protect the community from the Defendant. No condition of release can curb the Defendant's potential for violence or ability to continue dealing drugs.

### Conclusion

For the reasons discussed above, this Court should revoke the Magistrate Judge's order setting conditions of pretrial release, and the Defendant should be detained.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By: /s/ Paul Hart Smyth
> Paul Hart Smyth
> Assistant U.S. Attorney

Dated: July 29, 2005

CERTIFICATE OF SERVICE

Springfield, Massachusetts
July 29, 2005

    I, Paul Hart Smyth, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing to Attorney Thomas McGuire, Counsel for the Defendant, at 1365 Main Street, Springfield, MA.

*[signature]*
PAUL HART SMYTH
Assistant U.S. Attorney

EXHIBIT A

To whom it may corcern,

I'm writing to inform you that my name is Ivette Gonzalez. Enrique Gonzalez is my newphew. I took custody with my mother Graciela Ferrer. When he mother Jannette Gonzalez past away in 1988. My mothe Graciel Ferrer past away in 1994. I took all my newphew in custudy including Enrique Gonzalez. In 1994 we travel to Wooncoket RI. In 1997, we moved to Holyoke Mass until today. When he got senteced for 5 yrs. I alluray went to see him and I wrote to him. My newphew is not any day to the society. He very responisble & caring person. I hope you can understand that are a big family, and very united family We aluray spend our holiday together

Thank you.
Ivette Gonzalez
16 Cabot St 3C
Holyoke, Mass. 01040
413-315-3271

To whom it may concern,

My name is Evelyn Ferrer. I live at 81-T Longhill St Spfld, MA. 01108. I'm Enrique Gonzalez oldest aunt in the family by his mother side. Enrique was raised by my mother Graciela Ferrer. He was raised in Guayama Puerto Rico. Enrique went to school up into 11th grade. He went to school in Puerto Rico. Enrique lost he mom, which her name is Jannette Gonzalez, she die when he was 11yr old. My mother Graciela kept him until she past away. In 1994, my sister Ivette Gonzalez and stepfather Enrique Gonzalez took costudy of him. All the family travel to the U.S. We went to wooncoket RI. Enrique meet his 1st girlfriend, which they had a girl. Her name is Juliesy Jannet Gonzalez. She's 8yr.now. Enrique pick up his daughter every other weekend. He's a very loving & understanding person. Enrique Gonzalez loves sports, he love to jog. He likes to ride bike. He's favorite sport is soccer. He play for a team in Puerto Rico. Which he won trofies.

My nephew is a good father, a understanding person, good friend. He's very respectful & loving person. I don't think he's any danger to the society or the community.

Thank you,
Evelyn Felix
81 F Jorge St
Springfield, MA 01108
Tel: (413) 781-1930

To whom it may concern,

My name is Brenda Ayala. I live at 98 Longhill St in Spfld, Ma 01108. I was born in Bronx, New York. My mother moved to Spfld Ma in 1993. I been in Spfld Ma 31 yrs. I went to school here. I'm a certified CNA. I've been a Home Health aide for 7 yrs know. I meet Enrique Gonzalez about a yr ago. We became good friends first. Then we decide to become boyfriend & girlfriend about 4 month ago. I can tell you about Enrique that he's a good man. A loving father. I don't think his any danger to the comunity. He respects he's elderly. I was helping him get a job. He's into in mechic. He loves to fix car. He loves to play soccer, ride bikes. He loves music. We are planning to get marry in the future. I think he deserve a chance to make it better.

Thank You
Brenda Ayala
98-T Longhill St Spfld MA
(413) 732-0726

To whom it may concern,

I'm Victor Virello, the brother of Janetet Gonzalez and the mother of Enrique Gonzalez. Which makes him my nephew. I've been in his life ever since he was born. Enrique Gonzalez is a young normal person. He had two dificult situacion which he had to face. Both painful & very personal for him. The first painful & hurtful thing he had to confront was the lost of his mother. Which he suffer very much. He's father never was around or in his life. Wild he was trying to         from the pain, Life was hard on him again and this time, he lost his grandmother. His grandmom Graciela Ferrer past away. She took care of Enrique Gonzalez all her life. But like a big caring family that we are, we help each other by rising Enrique and his brothers. We allways tryed to live around each other. And when we are apart, we kept in contact by phone or mail all the time.

He's a young man which love sports. He's favorite sport is soccer. Enrique played soccer for a team in Puerto Rico. He visit many places with his team. I've never seen anything negative about him. He very polite and respectful to all the neigbors, he's allway in a happy mode. All his neigbors think of Enrique Gonzalez as a very positive person.

Thank you for considering my letter. The best of my knowlegde. to consult anything consering my Nawphew Enrique Gonzalez.

Signed:
Vict— Ovell
86 Longhill St #1A
Spfld, MA 01108
(413) 732-0726 or
433-1678

To whom it may concern,

My name is Gilberto Nieves I lived at 107 Lowell St in Spfld, Mass. About 1yr and 3month, I meet the Gentlemen Enrique Gonzalez. Enrique and I create a beautiful friendship. Even though I'm much older than him. Every time I needed a favor from him. He was allways there with no hessation. I don't think he's any danger to the society. Because I allways saw him given good aduise to younger kids. He would allway tell them, stay off the street & go to school. That allway inpress me & my family. Enrique has a girlfriend, which I know very well. Her name is Brenda Ayala which he loves alot and was changing he's life for her. She has 2 boys which he loves alot. Her boys love him too. Enrique loves to ride bike and play sports. He allway listening to music.

I don't think he represent any danger to the community. I don't think he a bad person. He deserves a chance. A Chance to work and proves to society that he can. Enrique and I allway talk about getting work. and how hard it is to find work. I allways told him, don't worry you'll find work. Just kept looking.

Thank You.
Paulito Nieves
101 Lowell st
Springfield MA 01128
Tel: 413-483-0897